Baker & Company, Inc. v. Commissioner.
Baker & Co. v. Commissioner
Docket No. 111870.
United States Tax Court
1943 Tax Ct. Memo LEXIS 104; 2 T.C.M. (CCH) 827; T.C.M. (RIA) 43436; September 23, 1943
*104 Marion N. Fisher, Esq., and Alfred C. Frodel, Esq., for the petitioner. Robert S. Garnett, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1938 in the amount of $67,108.48. The petition alleges that the respondent erred in his determination of the deficiency in holding that the petitioner was availed of during the year 1938 for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, and in holding that the petitioner was subject to the tax imposed by section 102 of the Revenue Act of 1938. Findings of Fact 1. The petitioner is a corporation organized under the laws of the State of New Jersey on December 22, 1903. It filed its income tax return for the calendar year 1938 with the collector of internal revenue at Newark. 2. Petitioner at all times material herein has been a manufacturing company. It is the largest and most important of a group of companies engaged in various parts of the general precious metals business known *105 as the "Engelhard Industries," a name and style derived from the fact that the principal stockholder and head of each company is and has been Charles Engelhard. This group includes Baker & Co., Inc., Hanovia Chemical & Manufacturing Co., American Platinum Works, Irvington Smelting & Refining Works, Precious Metals Developing Co., East Newark Realty Corporation, Gold Recovery and Refining Corporation, Baker & Co., of New York, Alpine Press, Inc., and Charles Engelhard, Inc. Each of these companies, with the exception of East Newark Realty Corporation and Alpine Press, Inc., was engaged in one or more phases of recovery and refinement of precious metals or the manufacture or sale of products of precious metals, including a great number of precious metal alloys, particularly in the platinum group. In addition, Hanovia Chemical & Manufacturing Co., (which is sometimes hereinafter called Hanovia) is engaged in the manufacture of quartz products. The petitioner was engaged in the refining of platinum metals, namely, platinum, rhodium, palladium, osmium, ruthenium, and iridium, from concentrates and in the manufacture of a vast number of articles from platinum metals and alloys of such metals, *106 and from gold and silver and their alloys. 3. By far the greater part of petitioner's business consisted of refining platinum metals and manufacturing products from such metals. Such articles include crucibles and other chemical laboratory equipment, plating for various high-temperature furnace linings, electrical contact points and other electrical equipment for numerous industrial uses. Such articles as the spinarettes used in the manufacture of various artificial silks and in fibre glass and catalysts, the principal of which was platinum alloy gauze used in the production of nitrates for fertilizers and explosives from nitrogen extracted from the air. The petitioner was also a large producer and supplier of jewelers' findings and dental supplies. 4. The use of platinum metals both in quantity and kinds of uses has increased enormously over the life of the petitioner and in 1938 there was no indication that such use had reached its limit but, on the contrary, that a large future increase was to be expected. Petitioner employed continuously a considerable staff of scientists who were engaged in research to improve the process of manufacture and to develop new uses for the platinum *107 metals and alloys. 5. The precious metals business, especially platinum, is a hazardous one and prudence requires the maintenance of substantial reserves to protect one engaged therein. During the experience of Charles Engelhard, covering a period of fifty years, platinum has sold as high as $165 an ounce and as low as $6 an ounce. 6. Petitioner's office and manufacturing plant are located within the city limits of Newark and consist of a number of buildings, more or less adjacent to each other, acquired over a long period of years. A part of the business is carried on in property held in the name of the East Newark Realty Corporation located in East Newark, several miles from the main group of buildings. 7. For the 12-year period 1927 to 1938, inclusive, the total earnings, including dividends received of petitioner after taxes, amounted to $1,244,858.65. In that same period the total cash dividends paid amounted to $974,323; income taxes paid $491,948.93; additions to building accounts $312,658.23; and additions to plant accounts $966,433.58. 8. During the years 1935 through 1938 the petitioner had net taxable income (as per income tax return) and paid cash dividends as follows: *108 Net Income
Cash Dividends
Year
Per Return
Paid
1935
$341,332.17
$104,938.00
1936
621,238.87
107,164.00
1937
527,830.88
110,725.00
1938
374,488.67
114,250.00
9. The net income of the petitioner for 1938 of $374,488.67 is accounted for as follows: Cash dividends paid
$114,250.00
Income taxes paid
56,376.45
Stock dividends paid
49,800.00
Addition to earned surplus
149,242.72
Other adjustments
4,819.50
Total
$374,488.67
10. The petitioner's balance sheets at the close of 1937 and 1938 show as follows: ASSETS
1937
1938
Cash
$ 315,103.34
$ 253,607.74
Notes Receivable
24,055.05
26,740.17
Accounts Receivable
1,183,287.58
1,204,423.24
Inventories
2,592,859.33
2,518,485.41
Stocks of Domestic
Corporations
1,703,084.84
1,798,947.84
Bonds of Domestic
Corporations
1,000.00
1,000.00
Stocks of Foreign Cor-
porations
652,353.09
652,353.09
Deferred Charges
8,928.99
11,237.95
Buildings
464,395.07
452,562.84
Plant and Equipment
658,242.69
647,759.77
Land
95,514.26
95,514.26
Goodwill
180,001.00
180,001.00
Due from Employees
1,191.82
8,047.54
Advances
6,382.87
14,098.78
Total
$7,886,399.93
$7,864,799.63
LIABILITIES
Accounts Payable
$ 608,338.43
$ 749,165.79
Notes Payable
1,066,762.01
762,831.64
Accrued Taxes
149,250.00
65,060.00
Other Accrued Ex-
penses
23,008.69
45,171.57
Dividends Payable
18,091.50
18,807.00
Reserve for Contingen-
cies
48,627.23
52,378.84
Common Capital Stock
1,253,800.00
1,303,600.00
Paid-in Surplus
778,000.00
778,000.00
Earned Surplus
3,940,522.07
4,089,764.79
Total
$7,886,399.93
$7,864,779.63
*109 11. Petitioner's net sales and inventories for the years 1929 through 1938, inclusive, were as follows: Year
Net Sales
Inventory
1929
$13,373,087.26
$3,323,804.93
1930
8,423,612.68
2,541,262.37
1931
5,435,740.69
2,272,749.01
1932
3,997,152.84
1,712,027.95
1933
7,372,614.75
1,888,038.66
1934
10,413,529.67
2,038,227.36
1935
12,360,046.15
2,697,731.50
1936
17,405,408.65
2,534,419.23
1937
17,986,269.28
2,592,859.33
1938
15,093,230.40
2,518,485.41
12. At different times the petitioner made large loans to wholly-owned subsidiary companies or to companies which formed the group constituting the Engelhard Industries. The amount owed to the petitioner at the close of 1937 by such companies was $470,753.13 and at the close of 1938 $411,561.15. The net amount for the year 1938 may be summarized as follows: Due from subsidiary companies
$602,628.09
Due from related companies
38,216.31
$640,844.40
Due to subsidiary and related
companies
240,668.60
$400,175.80
Sundry adjustments to above clas-
sified as reduction of accrued
expenses
$ 11,385.35
$411,561.15
13. The following discloses the companies in which the petitioner owned 100 percent of *110 the stock and the investment in such companies by petitioner at the end of the year 1938: Investments in Stock
Foreign or
Stock
of these companies
Company
Domestic
Ownership
at the end of 1938
Baker Platinum Co., Ltd
Foreign
100%
$190,840.59
Baker Platinum Co., Ltd., Canada
Foreign
100%
50,000.00
Baker Hakken Kabushiki Kaisha
Foreign
100%
57,637.50
Gold Recovery & Refining Corp.
Domestic
100%
44,000.00
East Newark Realty Corp.
Domestic
100%
250,000.00
Total
$592,478.09
14. The following discloses those corporations in which petitioner held stock and of which Charles Engelhard was also president, treasurer and general manager: Foreign
Investments in Stock
or
Stock
of these companies
Company
Domestic
Ownership
at the end of 1938
Irvington Smelting & Refining Works
Domestic
66 2/3%
$ 666,700.00
American Platinum Works
Domestic
39%
500,175.00
Precious Metals Developing Co.
Domestic
66 2/3%
12,570.00
Total
$1,179,445.00
15. The following discloses the investment of petitioner in the stocks of other corporations during the years 1937 and 1938: Purchased
Total
during
Total
1937
1938
1938
United Aircraft Corp.
$12,651.00
$ 12,651.00
First National Bank of Jersey City
$ 34,948.00
8,712.00
43,660.00
General Electric Co.
28,937.50
28,937.50
Public Service Corp. of N.J.
113,040.25
113,040.25
E. I. duPont de Nemours & Co.
14,480.55
14,480.55
Radio Corporation of America
536.16
536.16
National State Bank of Newark
31,087.50
75,500.00
106,587.50
General Motors Co.
5,609.88
5,609.88
Chemical Foundation -
Common and Preferred
1,000.00
International Nickel Co. of
Canada, Ltd., Common
353,875.00
353,875.00
$583,514.84
$96,863.00
$679,377.84
*111 16. During the years 1933 through 1938, the average amount of bank loans of the petitioner were: Year
Amount
1933
$ 376,591.41
1934
428,785.83
1935
559,265.99
1936
773,083.33
1937
1,046,666.66
1938
717,916.66
17. During the year 1938 the entire issued and outstanding stock of the petitioner was owned as follows: Shares
C. W. Baker
965
Charles Engelhard
5,268
Hanovia Chemical & Mfg. Co.
5,611
Emy M. Engelhard
957 1/2
C. W. Engelhard, Jr.
41 1/2
Its other stockholders
193
Total
13,036
18. The capital stock of Hanovia during the year 1938 was owned as follows: Shares
Charles Engelhard
1,199
C. B. Mitchell
1
Guaranty Trust Co. of N. Y.,
Trustee (for the benefit of
wife and son of Charles
Engelhard)
300
Emy M. Engelhard
300
19. The officials of the petitioner were advised by the War Department of the United States prior to 1938 of certain needs or plans for products which the petitioner manufactured. The petitioner's business was rapidly expanding in 1938 and the great expansion of its business which was foreseen in 1938 has since taken place. 20. During the entire period that Charles Engelhard was connected with the petitioner his *112 fixed salary was $25 per week plus a share of the profits. Originally such share was 10 percent of the profits (later revised to be nine percent) after four percent on preferred stock. 21. Petitioner at no time loaned any money to Charles Engelhard, its principal stockholder. It was his practice to draw against his share of the profits but at no time did such drawings during any year exceed the amount due him at the end of such year. 22. Petitioner did not during 1938 accumulate profits beyond the reasonable needs of its business. 23. The failure of petitioner to distribute to its stockholders in 1938 the entire amount of its earnings available for distribution in that year was not due to a purpose to avoid the imposition of surtax on its stockholders. Opinion The question presented by this proceeding is whether the petitioner is liable to income tax under section 102 of the Revenue Act of 1938. It is liable to such tax: * * * if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits *113 to accumulate instead of being divided or distributed, * * * [Sec. 102 (a)]. Prior to 1938 the respondent had much difficulty in the administration of section 102 of the Revenue Act of 1936 and corresponding provisions of prior acts. The Revenue Act of 1938 contained a new provision, section 102(c), which provides as follows: (c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. In commenting upon this provision of law the Senate Finance Committee (75th Cong., 3d Sess., S. Rept. 1567) stated: * * * The proposal is to strengthen this section by requiring the taxpayer by a clear preponderance of the evidence to prove the absence of any purpose to avoid surtaxes upon shareholders after it has been determined that the earnings and profits have been unreasonably accumulated. This will clearly shift the burden of proof to the taxpayer in such cases. * * * A reasonable enforcement of this revised section will *114 reduce tax avoidance to a minimum and increase the revenues from sources where there is ability to pay. This subsection of the bill provides that the fact that the earnings or profits are accumulated beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. Under existing law, an unreasonable accumulation is merely prima facie evidence of purpose to avoid surtax upon shareholders. Consequently, it has been argued that the only effect of an unreasonable accumulation is to shift to the taxpayer the burden of going forward with the evidence relating to purpose. Under the amendment, however, it is clear that an unreasonable accumulation puts upon the taxpayer the burden of proving by the clear preponderance of all the evidence submitted that it did not have the purpose of avoidance. The respondent concedes that the petitioner was not formed for the interdicted purpose referred to in section 102(a) but does contend that it was "availed of" for the interdicted purpose on the ground that it permitted its profits to accumulate beyond the *115 reasonable needs of its business. In the determination of the issue presented it is necessary to consider (1) whether the petitioner accumulated profits during 1938 beyond the reasonable needs of its business; and (2) if so, whether such accumulation was for the purpose of preventing the imposition of surtax on its stockholders. The petitioner was not a mere holding or investment company. It was an operating company which was carrying on a business which was practically world-wide. Its sales during 1938 were in excess of $15,000,000 and there was every prospect in 1938 that its business would increase. The petitioner had only a limited capital stock. Its business had been expanded largely through the utilization of an accumulated surplus. In order to carry on its business it was necessary for it to borrow large amounts of money. Its balance sheet at the close of 1938 showed accounts payable of $749,165.79 and notes payable of $762,831.64. It had large amounts of assets consisting in part of accounts receivable $1,204,423.24 and inventories of $2,518,485.41. Its cash on hand amounted to only $253,607.74. Its other principal assets consisted of investments in stocks of domestic *116 and foreign corporations amounting at the close of 1938 to $2,451,300.93. It is noteworthy, however, that most of these investments were made many years prior to the taxable year; that its principal investments in the shares of stock of foreign corporations were in stock of wholly owned subsidiaries which acted as distributors of petitioner's products; and that a large part of its investments in domestic corporations was in corporations forming the group of Engelhard Industries. It had also had a large investment during the taxable year of $353,875 in shares of stock of International Nickel Co. of Canada, Ltd. It acquired these stocks because of its close relationship to that corporation since it took the entire amount of platinum metals produced by it. It increased its investments in the shares of stock of the corporation during 1938 in the amount of $96,863. It is undoubtedly true that this investment made in 1938 was not necessary in the prosecution of the manufacturing and sales business of this petitioner. But if no part of the petitioner's earnings for 1938 had been distributed as dividends, and all had been retained as cash or in the reduction of bank loans, we do not think *117 that it can fairly be said that the accumulation was in excess of the reasonable needs of petitioner's business. A taxpayer which is an operating company is entitled to retain some profits to guard against the hazards of business. It is furthermore in evidence that in 1938 the petitioner foresaw the necessity for the great expansion which took place in subsequent years. Even if it may be assumed, however, that the petitioner might safely have distributed to its stockholders all of its earnings for 1938 in excess of its liability for income taxes for the year, we think that the evidence establishes beyond doubt that the failure to distribute such earnings was not for the purpose of preventing the imposition of the surtax upon its stockholders. There is nothing in the evidence to indicate that the question of surtax of the stockholders was ever taken into consideration in determining whether a dividend should be paid. During the 12-year period 1927 to 1938, inclusive, the total earnings, including dividends received by the petitioner after taxes, amounted to $1,244,858.65. In that same period the total amount of cash dividends distributed was $974,323, leaving a balance of $270,535.65. *118 The ratio of such dividends to earnings is 78 plus per cent. In the same period the corporation expended for additions to plant, buildings and equipment $1,279,091.81. The result is that the taxes and dividends paid plus funds actually employed permanently in the business exceeded the total earnings for the period by $1,126,929.16. The petitioner had a consistent policy of dividend payment, dividends being paid even in loss years. This was also true in earlier years, such as 1921, when the net income was $59,522.82 and dividends paid were in the amount of $150,000; also, in 1926 when the net income was $14,231.55 and cash dividends paid $71,560. In our opinion the evidence shows that the failure of the petitioner in 1938 to distribute in cash dividends earnings available for such distribution (in excess of $114,250 cash dividends paid and $56,376.45 income taxes accrued), was not due to any intent to avoid the imposition of surtax upon the petitioner's principal stockholders. Decision will be entered under Rule 50.